RECEIVED

JUL 2 3 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| DENNIS GABRIEL | CIVIL ACTION NO. 06-0578 |
| VS. | JUDGE DOHERTY |
| COMMISSIONER OF SOCIAL SECURITY | MAGISTRATE JUDGE METHVIN |

### REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, **IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

### *Background*

Born on May 3, 1975, Dennis Gabriel ("Gabriel") is a 32-year-old claimant with a tenth grade education. Gabriel has worked in the past as a front-end loader operator. On June 10, 2002, Gabriel filed an application for disability benefits and supplemental security income, alleging disability as of October 18, 2001 due to diabetes, high blood pressure, kidney problems, and depression. Gabriel's application was denied initially and on reconsideration, and after an administrative hearing, the ALJ issued an unfavorable decision. Gabriel appealed the decision to the Appeals Council, which remanded the case to the ALJ for a new hearing and decision.[1] A second hearing was held on June 28, 2005.[2] In an opinion dated August 15, 2005, the ALJ found that Gabriel retains the residual functional capacity to perform all exertional levels of work that allow for occasional blurred vision, and that he could return to his past work as a

---

[1] Tr. 33-34.

[2] Tr. 334-364.

front-end loader operator.[3] The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner from which Gabriel now appeals.

## *Assignment of Errors*

Gabriel argues that the ALJ erred in finding that he can return to his past work as a front-end loader operator.

## *Standard of Review*

This court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is "...more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Id.

## *ALJ's Findings*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

---

[3] Tr. 13-19.

3

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

When a mental disability claim is made, the Commissioner utilizes a corollary sequential procedure for determining the merits of the claim. Essentially, this procedure substitutes specialized rules at Step 2 for determining whether a mental impairment is severe, and also provides detailed guidelines for making the Step 3 determination as to whether the mental impairment meets or exceeds the Listings. The Regulations require:

> [T]he ALJ to identify specifically the claimant's mental impairments, rate the degree of functional limitation resulting from each in four broad functional areas, and determine the severity of each impairment. Furthermore, § 404.1520a(e) provides that the ALJ must document his application of this technique to the claimant's mental impairments.

Satterwhite v. Barnhart, 44 Fed.Appx. 652 (5th Cir. 2002) (unpublished).[4]

---

[4] For a succinct summary of the current law, see Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004):

1. The ALJ must first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether he or she has a medically determinable mental impairment.
2. If a medically determinable mental impairment is found, the ALJ must then rate the degree of functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) persistence or pace of concentration; and (4) episodes of decompensation. See C.F.R. §404.1520a(c)(3).
3. When a severe mental impairment is found, the Commissioner determines whether the impairment meets or exceeds the requirements of the Listings.

4

In the instant case, the ALJ determined that Gabriel's hypertension and diabetes mellitus with very early signs of kidney damage and peripheral neuropathy are severe within the meaning of the regulations. The ALJ concluded that Gabriel retains the residual functional capacity to perform all work that allows for occasional blurred vision. Relying on the testimony of a vocational expert, the ALJ concluded that Gabriel can return to his past work, and therefore, he is not disabled.

### *Findings and Conclusions*

After careful consideration of the record, the undersigned concludes that the ALJ's decision is supported by substantial evidence.

### Medical History

Gabriel suffers from hypertension and diabetes. Records from University Medical Center ("UMC") show that Gabriel has been treated at UMC for hypertension and diabetes since 2001. On May 9, 2001, it was noted that Gabriel's diabetes was controlled with medication. On October 31, 2001, it was noted that Gabriel's diabetes was poorly controlled at that time, with Gabriel complaining of numbness in his hands and feet and blurred vision.[5] On May 15, 2002, Gabriel complained of occasional dizziness when he awakes in the morning, but otherwise he

---

4.  When the severe mental impairment does not meet Listing requirements, the Commissioner then assesses the claimant's residual functional capacity.
The procedure states that if the degree of limitation in the first three functional areas is "none" or "mild," and "none" in the fourth area, the ALJ will generally conclude that the impairment is not severe, *unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities.* Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(1).

[5] Tr. 256.

was doing well.[6] On March 24, 2003, it was noted that Gabriel had "poor compliance" with his medical regime.[7]

Gabriel was examined by Dr. Charles Barkemeyer, a neurologist, at the request of Disability Determination Services.[8] Gabriel complained of right leg numbness and chronic headaches with intermittent blurred vision. Gabriel was alert and attentive. A visual field defect was not identified, and he had 20/40 vision in his right eye and 20/30 in his left eye. He had normal gait and movement in his extremities. Dr. Barkemeyer concluded that Gabriel's "headaches appear to be tension/muscle contraction type headaches. In addition, he has a history of right leg numbness. The existence of a neurological disorder explanatory for his right leg numbness was not established."[9]

On March 11, 2003, Gabriel was examined by Dr. Andre Cenac, an orthopaedic surgeon, complaining of an injury to his right wrist that occurred on January 4, 2003 when he fell off of a ladder at work.[10] Dr. Cenac noted that Gabriel had been examined immediately following the fall and there was no radiographic evidence of abnormalities in the wrist. Dr. Cenac ordered an MRI, which was normal.[11] On April 28, 2003, Dr. Cenac noted that Gabriel's wrist was improving steadily.[12]

---

[6] Tr. 252.

[7] Tr. 295.

[8] Tr. 270-273.

[9] Tr. 271.

[10] Tr. 314, 325.

[11] Tr. 313.

[12] Tr. 309.

6

On August 16, 2004, Gabriel sought treatment at St. Mary Mental Health, complaining of depression.[13] Gabriel was prescribed Geodon for his depression.

On September 28, 2004, Gabriel was examined at Franklin Foundation Hospital complaining of low back pain resulting from an on-the-job accident eight months prior.[14] Gabriel had negative straight leg raises and normal gait. On October 4, 2004, Gabriel returned to Franklin Foundation Hospital complaining of right knee pain. An x-ray of his knee was normal.[15] It was noted that Gabriel was "admittedly very noncomplaint" with his diabetes medication and he had diabetic neuropathy and hyperglycemia.[16]

## Disability finding

Gabriel argues that the ALJ erred in concluding that he could return to his past work as a front-end loader operator because his blurred vision precluded such work. Gabriel also argues that the ALJ should have obtained a second consultative examination.

The ALJ is entitled to determine the credibility of the examining physicians and medical experts and to weigh their opinions accordingly. Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994). The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity. Perez v. Heckler, 777 F.2d 298, 302 (5th Cir. 1985). Further, the ultimate issue of disability is reserved to the Commissioner. Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990). Additionally, the ALJ has the discretion to order a consultative examination. Jones v. Bowen, 829 F.2d 524 (5th Cir. 1987).

---

[13] Tr. 181.

[14] Tr. 101.

[15] Tr. 95.

[16] Tr. 91-92.

7

The ALJ determined that:

> Due to the possibility of exacerbation of hypertension and diabetes that could result in occasional blurred vision (which the claimant infrequently has asserted - February 12, 2003), the undersigned finds that the claimant has the residual functional capacity to perform all work that allows occasional blurred vision.[17]

In so concluding, the ALJ noted that although Dr. Berkemeyer had a completely normal physical examination of Gabriel, he completed a worksheet that indicated that Gabriel had limitations on his ability to lift and carry. The ALJ noted that because there was nothing in Dr. Berkemeyer's report or in the record that indicated that Gabriel had such limitations, Dr. Berkemeyer's opinion was discounted. Likewise, the ALJ found that Gabriel's assertions of disabling limitations were not credible based on the objective medical evidence. Further, the ALJ noted the opinion of a state medical expert, finding that Gabriel had no significant exertional limitations.

The ALJ then noted the testimony of the vocation expert, which indicated that Gabriel could perform the work of a front-end loader operator:

> The evidence in this case establishes that the claimant has past relevant work as front-end loader operator. The vocational expert testified that this work is considered SVP 3 medium work. According to the vocational expert, occasional blurred vision would not prevent the claimant from performing this job. Considering the foregoing, the undersigned finds that the claimant is able to return to his past relevant work as a front-end loader operator.[18]

The court's function is to determine whether substantial evidence supports the ALJ's decision. As set forth above, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson v.

---

[17] Tr. 17.

[18] Tr. 18.

8

Bowen, 864 F.2d 340, 343 (5th Cir.1988). Here, the medical evidence supports the ALJ's finding that Gabriel retained the residual functional capacity to perform his past work. Although Gabriel has hypertension and diabetes which sometimes causes him to have blurred vision, the record is void of any medical evidence indicating that these limitations prevent him from working. Likewise, although Gabriel argues that his depression, leg numbness and hand swelling should have been included in the ALJ's residual functional capacity assessment, there is no medical evidence showing that these occasional symptoms impacted Gabriel's ability to work.

Moreover, although Gabriel argues that the ALJ should have obtained a second consultative examination he has not shown that such an examination would have changed the outcome of this case. The record shows that the ALJ ordered one examination and Gabriel presented his complaints, including leg numbness and blurred vision, to the physician, and the physician's examination did not reveal any objective evidence supporting these complaints. Thus, Gabriel was afforded an examination, and the ALJ was not required to order a second examination.

Additionally, although Gabriel argues that his blurred vision would prevent him from seeing the operating controls on the front-end loader, the record shows that his blurred vision is not persistent. Gabriel complained of blurred vision on a few occasions, but most of his examinations did not mention vision problems.

Thus, the medical records support the ALJ's determination that Gabriel suffered from only occasional blurred vision and that his impairments did not prevent him from performing the exertional requirements of all work.

9

Considering that the ALJ's residual functional capacity assessment is supported by the record, it follows that the ALJ's hypothetical question posed to the vocational expert which incorporated that residual functional capacity findings was appropriate. *See* Morris v. Bowen, 864 F.2d 333 (5th Cir. 1988). In response to the question, the vocational expert testified that a person who suffered from only occasional blurred vision could perform Gabriel's past work as a front-end loader operator. The expert specifically testified that the job of front-end loader operator as performed by Gabriel in the sugar cane industry does not exceptional visual acuity, nor would occasional blurred vision pose any type of hazardous condition.[19] Accordingly, the record supports the ALJ's determination that Gabriel, even with occasional blurred vision, could perform his past work as a front-end .

Because credible evidentiary choices and medical findings exist which support the ALJ's decision the undersigned concludes that substantial evidence supports the non-disabled finding.

*Conclusion*

Considering the foregoing, it is recommended that the Commissioner's decision be **AFFIRMED.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) days from receipt of this Report and Recommendation to file specific, written objections with the Clerk of Court. Counsel are directed to furnish a courtesy copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10)**

---

[19] Tr. 358-360.

10

days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana on ____July 23____, 2007.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

COPY SENT:
DATE: 7/23/07
BY: CW
TO: RFD